**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**TIMOTHY E. WALLACE,**
                              **Plaintiff,**
**v.**
                                                                        **02-CV-0308A(Sr)**
**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONAL SERVICES,**
                              **Defendant.**

---

## DECISION AND ORDER

The parties have consented, pursuant to 28 U.S.C. § 636(c), to have the

undersigned conduct all further proceedings in this case, including entry of judgment.

Dkt. #25.

Plaintiff commenced this action seeking damages pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), for the termination of

his employment as a corrections officer at the Gowanda Correctional Facility

("Gowanda"), in retaliation for his testimony in support of a civilian employee's claim of

harassment.  Dkt. #11.  The defendant asserts that plaintiff was terminated due to his

absence from employment without leave and his failure to contact his employer during

his absence.  Dkt. #54, p.8.

Currently before the Court is defendant's motion for summary judgment

(Dkt. #26), and plaintiff's motions for summary judgment.  Dkt. ##43, 47.  For the

following reasons, defendant's motion is granted and plaintiff's motions are denied.

-1-

**BACKGROUND**

Plaintiff commenced employment as a corrections officer at Gowanda on September 18, 1989.  Dkt. #53, ¶ 1.  As documented by the declaration of Lt. Wiley, Attendance Control Officer at Gowanda, and Ann Albrecht, Head Clerk for Personnel at Gowanda, plaintiff's employment history was permeated with attendance issues.  Dkt. ##29 & 39.  For example, an arbitrator upheld defendant's April 7, 1999 notice of discipline for incurring nine absences within nine months, including six days absent without leave, and submitting altered medical documentation with respect to four of those days.  Dkt. #39, Exh. A, pp.42-53.  Voluminous counseling records addressed plaintiff's repeated failure to timely produce adequate medical documentation to justify his absences.  Dkt. ##29 & 39.

On March 15, 1999, Jerald Goncalves, an Affirmative Action Administrator with the New York State Department of Correctional Services ("DOCS"), Office of Diversity Management, interviewed plaintiff regarding a civilian employee's complaint that another corrections officer harassed her because of her sexual orientation.  Dkt. #32, ¶ 9 & p.4; Dkt. #33, pp.60-63.  Plaintiff provided a written statement on May 13, 1999.  Dkt. #33, pp.54-58.

Plaintiff alleges that following his interview, other corrections officers retaliated against him by refusing to speak to him.  Dkt. #44, ¶ 9.  At his deposition, plaintiff conceded that this behavior did not interfere with his ability to perform his job duties and that he never made any complaints to his superiors regarding this behavior.

Dkt. #37, pp. 62, 66.  The investigation, which included interviews with numerous employees at Gowanda, resulted in the corrections officer receiving formal counseling. Dkt. #33, pp.60, 71.

Plaintiff was formally counseled on January 28, 2000 following 14 absences in the previous six months, including five absences without leave.  Dkt. #39, Exh. A, pp.28, 34.

Plaintiff served his suspension with respect to the April 7, 1999 notice of discipline from April 6, 2000 through May 5, 2000, and then failed to report to work on May 6, 2000.  Dkt. #29, ¶ 19 & p.140; Dkt. #33, ¶ 49.

On May 31, 2000, plaintiff was arrested in Collins, New York and ultimately convicted of facilitating the unlicensed operation of a motor vehicle; operation of an unregistered motor vehicle; and a parking violation.  Dkt. #39, Exh. A, pp.70, 74. In attempting to determine the outcome of these charges, the Superintendent at Gowanda informed plaintiff that

> an attempt was made to send you a certified letter which was returned to the facility stamped "not deliverable as addressed."  It is every employee's responsibility to keep their current address on file.  You are hereby directed to inform the Personnel office of your correct, current address.

Dkt. #39, Exh. A, p. 72.  Plaintiff filed a notice of address change with the Personnel office on September 13, 2000.  Dkt. #33, Exh. B, p.313.

On October 13, 2000, plaintiff was cited for operation of a motor vehicle with a suspended license. Dkt. #33, Exh. A, p. 74. Following his failure to appear in court with respect to this charge, an arrest warrant issued, resulting in plaintiff's arrest while on duty at Gowanda on December 7, 2000. Dkt. #33, Exh. A, pp.75-77. A Notice of Discipline dated January 2, 2001 proposed thirty days suspension for plaintiff's third charge of operating a motor vehicle with a suspended license, failure to report the charge and his arrest at Gowanda for failing to appear on the charge. Dkt. #33, Exh. A, p.87. Discipline was not imposed as plaintiff was terminated before arbitration of his grievance. Dkt. #29, p.202.

Plaintiff was arrested on February 17, 2001 and charged with driving with a suspended license. Dkt. #29, pp.116, 198; Dkt. #36, ¶ 16.

Plaintiff was formally counseled on February 19, 2001, following six absences between May 6, 2000 and December 30, 2000. Dkt. #39, Exh. A, p.40.

On Febraury 23, 2001, plaintiff avers that he slipped on some ice on the sidewalk while he was escorting inmates to the infirmary for sick call. Dkt. #44, ¶¶ 27-28. In his affidavit, plaintiff states that Nurse Comstock filled out an accident report and told plaintiff that he had filed it with Fire and Safety.[1] Dkt. #44, ¶ 29. Nurse Comstock declares that he filled out an employee accident report for plaintiff and gave it to plaintiff

---

[1] On August 13, 2001, Compensation Claims Investigator Diana Currie noted that plaintiff insists he saw the nurse and filled out accident report – "says he delivered it himself!!" Dkt. #36, p.18. At his workers' compensation hearing on December 5, 2001, plaintiff testified that he gave the accident report to the Personnel office on February 23, 2001. Dkt. #52, p.6.

so that he could obtain a signature from the area sergeant and give one copy of the triplicate form to the Personnel office and one to the Chart office.  Dkt. #31.  Plaintiff's supervisors, Sergeant Dembik and Sergeant Russell, deny any report of an accident by plaintiff on February 23, 2001.  Dkt. #36, pp.35, 41-42.  The Personnel office also denied receipt of plaintiff's accident report.  Dkt. #36, pp.18, 21, 27.

Later that evening, plaintiff avers that he called Gowanda and told Sergeant Parisi that he would not be in to work because of his injury and that he had a doctor's appointment in a week.  Dkt. #44, ¶ 33; Dkt. #52, p.7.  Gowanda's report of absence indicates that plaintiff reported off with a bad back.  Dkt. #33, p.93.

Plaintiff saw his doctor on March 2, 2001 and was diagnosed with lower back strain.  Dkt. #44, ¶¶ 35, 37.  He was instructed to stay out of work for two weeks.  Dkt. #44, ¶ 37.  Plaintiff gave his doctor a Workers' Compensation form to complete and return to Gowanda, but later determined that the doctor had mailed the forms to the Empire State Insurance Fund.  Dkt. #44, ¶¶ 38-39.

By letter dated March 5, 2001, plaintiff was advised that

Due to the length of your absence, we are provisionally designating your absence as leave under the Family Medical Leave Act.  Upon submission of the attached medical form from your physician, we will make a final decision on your status.

Please have your physician complete the attached medical form and submit it to me no later than 3/12/2001 to cover your current absence.

Dkt. #33, p.95.  This letter, which was mailed to the address provided by plaintiff in his notice of address change on September 13, 2000, was returned by the post office on March 12, 2001, with a stamp, "Attempted Not Known" on the envelope.  Dkt. #33, p.128.

Plaintiff returned to his doctor on March 9th and was told to stay out of work for two additional weeks.  Dkt. #44, ¶ 41.

By letter dated March 12, 2001, Superintendent Hodges informed DOCS' Deputy Commissioner Lucien LeClaire that

> C.O. Timothy Wallace provided information that trial has been set for March 22 in regards to his arrest on October 13, 2000 for Aggravated Unlicensed Operation of a Motor Vehicle in the third degree in Violation of Section 511-1(a).
> He also provided the attached memo dated "March 19"[2] indicating that he was issued another ticket on February 17 in the Town of Collins this time for driving with a suspended license.  The appearance date is March 14, 2001.  We have no further official information regarding this new arrest.
> He called in sick on February 23 and has not returned to work since that date.  All attempts to contact CO Wallace have been unsuccessful due to the fact that both the telephone number and address that he recorded with the Personnel Office are incorrect.

Dkt. #29, p.198.

---

[2] Given that plaintiff crossed out March and inserted February with respect to the date of the ticket, the correct date of the memo is probably February 19.

At 9:45 a.m. on March 13, 2001, Ms. Albrecht attempted to call Mr. Wallace at home, but the number she had on file was disconnected.  Dkt. #33, ¶ 37. Lt. Wiley also declared that he personally attempted to reach plaintiff during his absence subsequent to February 23, 2001, "but was unable to do so because the number on file for Mr. Wallace had been disconnected."  Dkt. #39, ¶ 55.

Plaintiff affirms that he called Gowanda on March 15th and spoke with Ann in the Personnel office.  Dkt. #44, ¶¶ 35-36.  Ms. Albrecht, who affirms that she is the only Ann in the Personnel office, denies speaking with plaintiff on March 15th.  Dkt. #50, ¶¶ 5-6.

By letter date March 15, 2001, Gowanda Superintendent Gary Hodges sent plaintiff the following letter by certified mail, return receipt:

> This is to inform you that as of February 24, 2001, you have been considered absent without leave (AWOL). This status is a result of your neglect to contact the facility since February 24, 2001.
> We last had contact with you on February 23, 2001, when you called the facility and reported your absence for February 24, 2001.  Since this date, you have not had contact with this facility and we have not received any medical documentation from you.  On March 5, 2001, you were informed in writing that a medical must be received by March 12, 2001, to continue approved LWOP status.
> Section 14.10 Unauthorized absence of the 1995-99 Agreement between the State of New York and Security Unite Services NYSCOPBA states, "Any employee absent from work without authorization for ten (1) consecutive workdays shall be deemed to have resigned from his position if he has not provided a satisfactory explanation for such absence on or before the eleventh (11th) workday following the commencement of such unauthorized absence."

> If you have not reported to duty or notified this facility of a satisfactory explanation as to your absence on or before March 29, 2001, you will be deemed to have resigned from your position of Correction Officer with the New York State Department of Correctional Services at the close of business.

Dkt. #33, p.96.  This letter, which was mailed to the address provided by plaintiff in his notice of address change on September 13, 2000, was returned by the post office on March 28, 2001, with a stamp, "Attempted Not Known" on the envelope.  Dkt. #33, p.130.

Plaintiff was incarcerated at the Erie County Holding Center from March 23, 2001 through March 30, 2001.  Dkt. #37, pp.20-21.

On March 30, 2001, after confirming with Ms. Albrecht that plaintiff had not contacted Gowanda, Ms. Lansing drafted a recommendation for plaintiff's termination and submitted it to Janice Taylor, DOCS" Associate Administrator for Personnel.  Dkt. #36, ¶¶  28-29, 32.  Ms. Taylor signed the recommendation and forwarded it Terry Baxter, DOCS' Assistant Director for Personnel, who signed the recommendation on April 1, 2001 and forwarded it to Lee Gould, DOCS' Director of Personnel.  Dkt. #36, ¶¶ 33-34.  Mr. Gould signed the recommendation on April 1, 2001 and forwarded it to Charlie Harvey, the Director of DOCS' Office of Diversity Management.  Dkt. #36, ¶ 35.  Mr. Harvey approved the decision to terminate on April 2, 2001.  Dkt. #36, ¶ 40.

By letter dated April 5, 2001, Mr. Gould informed plaintiff that his resignation had been processed following his absence from work for ten consecutive work days without explanation.  Dkt. #33, p.94.  This letter, which was also mailed by certified mail, return receipt requested, to the address provided by plaintiff in his notice of address change on September 13, 2000, was returned by the post office on April 12, 2001, with a stamp, "Attempted Not Known" on the envelope.  Dkt. #33, p.131.

On May 1, 2001, plaintiff contacted Ms. Albrecht at Gowanda and provided her with an updated address and telephone number.  Dkt. #33, ¶ 47.  Plaintiff also called Leslie Lansing, the Associate Personnel Administrator in DOCS' Central Office, to discuss his termination.  Dkt. #36, ¶ 46.

On July 16, 2001, Ms. Albrecht received a physician's note dated July 10, 2001 indicating that plaintiff had been seen on March 2, 2001 and March 9, 2001 for back strain and was off work from February 23, 2001 through March 23, 2001.  Dkt. #36, ¶ 37 & p.19.  A separate note by Dr. Elvin Witmer, dated August 14, 2001, states that plaintiff

> had a work comp. injury to the back in 3/01.  It was not billed as work comp at that time, but history indicates it was work related.

Dkt. #33, ¶ 48; Dkt. #36, p.20.

On August 14, 2001, a Senior Personnel Administrator with DOCS Central Offices reviewed plaintiff's personnel record and noted that although plaintiff's "overall

career performance would be considered good," his "overall time and attendance record would be considered unsatisfactory." Dkt. #36, p.22.  As a result, it was recommended that plaintiff's request for reinstatement be denied.  Dkt. #36, p.23.   Terry Baxter, DOCS' Director of Personnel advised plaintiff that his request for reinstatement was denied by letter dated August 14, 2001.  Dkt. #36, p.24.

Plaintiff submitted a claim for workers' compensation benefits dated August 15, 2001.   Dkt. #36, p.25.  Although DOCS challenged the claim on the ground that plaintiff never reported the injury, the Workers' Compensation Board ultimately determined that plaintiff was disabled from February 29, 2001 to March 23, 2001.  Dkt. #36, pp.27, 44-45.

By Decision filed August 21, 2001, the Unemployment Insurance Appeal Board determined that because the plaintiff's doctor had failed to return the paperwork to Gowanda,

> the employer had not received notice of the claimant being out on a Workers Compensation injury and started to send letters to the claimant's address.  However, the claimant had moved to [sic] that address and had filed a change of address form with one of his supervisors immediately after he moved in January of 2001.  The claimant never received any of the certified letters that the employer sent to him demanding either a doctor's note or some response to its inquiries as to why he had not been at work.  By the time ten working days had elapsed the employer then generated a letter stating the claimant was deemed to have voluntarily left his job by not being present for ten days.  The claimant was still under the care of a doctor and was not released from the care of his doctor until after the supposed termination.  The claimant did not voluntarily leave his job.

Dkt. #44, Exh. B, p.2.  Instead, the ALJ concluded that plaintiff's "job separation came

about as a result of a series of miscommunications."  Dkt. #44, Exh. B, p.2.


On October 1, 2001, plaintiff filed a charge of discrimination with the

Equal Employment Opportunity Commission ("EEOC"), alleging that

> On or about [February] 24, 2001, I suffered an on-the-job
> injury, which I reported.  When I applied for Workers'
> Compensation benefits, however, I was told that since no
> accident report had been filed with Respondent . . . benefits
> would be denied.  I believe that this was done in retaliation
> for my testimony in a hearing during the summer of 2000
> regarding a fellow officer's claim of sexual harassment.
> From the date of my testimony until the day of my discharge,
> work conditions became more and more intolerable as I was
> ostracized because of my co-workers' negative reactions to
> my testifying. . . . following my discharge, the accident report
> that I allegedly never filed mysteriously appeared.
> Respondent, however, refuses to address the issue of my
> discharge.
>
> I believe I have been discriminated against, in that
> Respondent deliberately held back the accident report which
> led to my being denied benefits, which then led to my being
> discharged, solely in retaliation for my testimony in a prior
> EEO complaint . . . .

Dkt. #30, p.4.


On January 15, 2002, plaintiff filed a second charge of discrimination with

the EEOC, alleging since the initial charge was filed, DOCS "has retaliated against me

for filing the EEOC charge, in that they have not been willing to discuss my situation or

whether the possibility exists that I could get my job back."  Dkt. #30, p.31.

The EEOC issued right-to-sue letters on both charges January 23, 2002. Dkt. #30, pp.37-38.  Plaintiff commenced this action on August 23, 2002.  Dkt. #1.  As set forth in his amended complaint, plaintiff alleges that defendant retaliated against him for testifying against a corrections officer with respect to an employee's claim of sexual harassment by creating a hostile work environment, intentionally withholding the February 23, 2001 accident report so as to justify denial of workers' compensation benefits and terminating his employment.  Dkt. #11.  Plaintiff alleges that defendant also retaliated against him for filing an EEOC charge by refusing to reinstate his employment after defendant allegedly discovered that plaintiff had filed an accident report.  Dkt. #11.

By Decision dated June 24, 2005, Public Employment Relations Board Administrative Law Judge Susan A. Comenzo determined that DOCS unilaterally changed Directive 2202, effective November 19, 2001, to require that employees call in on each day of a multiple day unscheduled absence as opposed to the prior requirement that they call in only prior to the first day of such absence and then again when ready to return to work.  *See New York State Correctional Officers and Police Benevolent Association, Inc. v. State of New York (Department of Correctional Services)*, Case No. U-23174.

## DISCUSSION

Defendant argues that because Title VII does not prohibit discrimination based upon sexual orientation, plaintiff's participation in the investigation of a complaint

of harassment based on sexual preference cannot constitute protected activity for purposes of a Title VII retaliation claim.  Dkt. #28, pp.8-10.  Even if plaintiff's statements could constitute protected activity, defendant asserts that plaintiff's allegations of social ostracism are insufficient to demonstrate a hostile work environment in retaliation for such participation.  Dkt. #28, pp.10-17.  Defendant also argues that plaintiff cannot demonstrate that his termination was causally related to his statements about another corrections officer.  Dkt. #28, pp.17-18.  To the contrary, defendant asserts that the record is clear that defendant terminated plaintiff for the legitimate, non-discriminatory reason that

> after racking up a terrible attendance record and being
> counseled repeatedly about his lax attitude toward showing
> up for work, he went AWOL for a month.  The facility tried to
> reach him but couldn't because he had failed to provide a
> current address and telephone number.

Dkt. #28, p.18.  Defendant asserts that plaintiff was not entitled to reinstatement because he was terminated for a valid reason which was not negated by Nurse Comstock's recollection that he completed an accident report for plaintiff or the Workers' Compensation Board's award of benefits.  Dkt. #28, pp.19-21.

Plaintiff argues that he was terminated in retaliation for his testimony during a sexual harassment hearing and that the decisions of the Workers' Compensation Board and the Department of Labor negate defendant's proffer of job abandonment as a legitimate, non-discriminatory basis for his termination.  Dkt. #45.

Defendant responds that, pursuant to New York State Unemployment Insurance Law § 623(2),[3] the unemployment decision lacks evidentiary value.  Dkt. #54, p.6.  In any event, defendant asserts that the unemployment decision "proves nothing about the legitimacy of defendant's reason for terminating plaintiff."  Dkt. #54, pp.6-7.  Similarly, defendant argues that the workers' compensation proceeding, which addressed whether plaintiff sustained injury while working, has no bearing upon defendant's termination of plaintiff for failing to properly notify his employer of his absence.  Dkt. #54, p.8.   Moreover, defendant argues that plaintiff has failed to proffer any evidence to support his claim that the actual reason for plaintiff's termination was retaliation for his testimony in the harassment investigation.  Dkt. #54, p.7.

**Summary Judgment Standard**

_____Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff."  _Thomas v. Irvin_, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

---

[3] This statute provides that:

> No finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding.

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982.   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

## **Retaliation**

"Title VII provides that '[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter.'" *Raniola v. Bratton*, 243

F.3d 610, 623 (2d Cir. 2001), *citing* 42 U.S.C. § 2000e-3(a).  "The objective of this

section is obviously to forbid an employer from retaliating against an employee because

of the latter's opposition to an unlawful employment practice."  *Manoharan v. Columbia*

*Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).


        In the absence of direct evidence of discrimination, Title VII claims are

analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas*

*Corp. v. Green*, and its progeny.  411 U.S. 792, 802 (1973).  This analysis requires that

plaintiff establish a *prima facie* case of retaliation by showing: (1) participation in a

protected activity known to the defendant; (2) an employment action disadvantaging the

plaintiff; and (3) a causal connection between the protected activity and the adverse

employment action.  *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d

Cir.), *cert. denied*, 528 U.S. 964 (1999).  The burden on the plaintiff at this stage of the

analysis is *de minimis*.  *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253

(1981).  Evidence of discrimination is not required.  *James v. New York Racing Assoc.*,

233 F.3d 149, 153 (2d Cir. 2000).


        If plaintiff meets this initial burden and establishes a *prima facie* case, a

rebuttable presumption of discrimination arises, and the burden shifts to the defendant

to articulate a legitimate, non-discriminatory reason for the employment action.  *Id.; see*

*Burdine,* 450 U.S. at 254.  "Any such stated purpose is sufficient to satisfy the

defendant's burden of production; the employer does not have to persuade the court

that the stated purpose was the actual reason for its decision." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 153 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 509 (2002).

If the employer carries this burden of production, the presumption raised by the *prima facie* case is rebutted and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).  At this point, the case "becomes like any other case in that the plaintiff[s], in order to prevail, must have evidence from which the factfinder can reasonably find the essential elements of the claim." *James*, 233 F.3d at 154.  Accordingly, in the context of a motion for summary judgment, the Court must examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him.  *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).  The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant was false, and that more likely than not discrimination was the real reason for the employment action.  *Weinstock v. Columbia Univ., *224 F.3d 33, 42 (2d Cir. 2000), *cert. denied,* 540 U.S. 811 (2003).

Protected Activity

With respect to the first element of a retaliation claim – participation in a protected activity known to the defendant – plaintiff need not establish that the conduct he opposed was actually a violation of Title VII, but only that he possessed a good faith,

-17-

reasonable belief that the underlying employment practice was unlawful. *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).  In the instant case, the civilian employee complained of harassment on the basis of sexual preference.  Dkt. #32, ¶ 9 & p.4; Dkt. #33, pp.60-63.  However, "Title VII does not prohibit harassment or discrimination because of sexual orientation."  *Dawson v. Bumble & Bumble,* 398 F.3d 211, 217 (2d Cir. 2005), *quoting Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000).  Since the civilian employee's complaint was not encompassed by Title VII, plaintiff's participation in an investigation of that complaint cannot constitute retaliation pursuant to Title VII.  *See Wimmer*, 176 F.3d at 136 (since discrimination by co-employees against non-employees is not cognizable under Title VII, plaintiff could not have reasonably believed that he was opposing an unlawful employment practice where he alleged retaliation for opposing such conduct); *Manoharan,* 842 F.2d at 594 ( complaint directed at conduct outside the definition of an unlawful employment practice cannot support *prima facie* case of retaliation). Accordingly, plaintiff has failed to establish that he engaged in protected activity as required to demonstrate a *prima facie* case of retaliation under Title VII.


Adverse Employment Action

Even if plaintiff's participation in the investigation of the civilian employee's complaint constituted protected activity, his claim that other corrections officers retaliated against him for such participation by refusing to speak to him fails to set forth an adverse employment action as contemplated by the second criteria for a *prima facie* case of retaliation.  "An adverse employment action is a 'materially adverse change' in

the terms and conditions of employment." *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d

Cir. 2005).  "[S]uch an action is one which is more disruptive than a mere

inconvenience or an alteration of job responsibilities." *Id.* (internal quotes omitted).

"Examples of materially adverse changes include termination of employment, a

demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other

indices . . . unique to a particular situation." *Id.* (internal quotation omitted).


        In the instant case, plaintiff affirms that, following his participation in the

investigation into the civilian employee's complaint of harassment, his co-workers

stopped speaking to him.  Dkt. #44, ¶ 9.  If a co-worker had essential information,

plaintiff avers that it would be relayed to him through a co-worker who did speak to

plaintiff.  Dkt. #44, ¶¶ 10, 12.  At his deposition, plaintiff conceded that this behavior did

not interfere with his ability to perform his job duties and that he never made any

complaints to his superiors regarding this behavior.  Dkt. #37, pp. 62, 66.  However,

allegations that a plaintiff has been "completely ostracized and excluded from important

meetings and social events" are insufficient to establish an adverse employment action.

*Chan v. NYU Downtown Hosp*., No. 03 Civ. 3003, 2006 WL 345853, at *8 (S.D.N.Y.

Feb. 14, 2006); *see also Davis v. Verizon Wireless*, 389 F. Supp.2d 458, 478 (W.D.N.Y.

2005) ("Menacing looks, name calling, or being shunned by co-workers does not

constitute an adverse employment action."); *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228

F. Supp.2d 377, 385-86 (S.D.N.Y. 2002) (plaintiff's allegations that he was "harassed,

shunned, and subjected to an intimidating work environment" do not rise to the level of

adverse employment action), *aff'd*, 2003 WL 22221352 (2d Cir. 2003).  Thus, plaintiff's

claimed hostile work environment is insufficient to demonstrate an adverse employment

action for purposes of his retaliation claim.


Causal Connection

        While plaintiff's termination qualifies as an adverse employment action,

even if plaintiff's participation in the investigation of the civilian employee's complaint

constituted protected activity, plaintiff has failed to raise a material question of fact to

connect his termination to his participation in this investigation.  "Proof of causal

connection can be established *indirectly* by showing that the protected activity was

followed closely by discriminatory treatment, or through other evidence such as

disparate treatment of fellow employees who engaged in similar conduct, or directly

through evidence of retaliatory animus directed against a plaintiff by the defendant."

*DeCintio v. Westchester County Med. Ctr*, 821 F.2d 111, 115 (2d Cir.) (internal citations

omitted), *cert. denied*, 484 U.S. 965 (1987).  In the instant case, however, plaintiff's

termination occurred approximately two years after the investigation into the civilian

employee's complaint.  "This two year gap is too wide to support the inference that [he]

was terminated in retaliation for complaining about discrimination, and [plaintiff] failed to

adduce any other evidence to indicate that [his] discharge was the product of retaliatory

animus . . . [or] that DOCS treated other employees in a dissimilar fashion."

*Richardson v. New York State Dep't of Corr. Servs*., 180 F.3d 426, 447 (2d Cir. 1999).


        Even assuming a causal connection did exist for purposes of establishing

a *prima facie* case, DOCS has offered a legitimate, nondiscriminatory reason for

terminating plaintiff's employment, *i.e.*, its inability to contact the plaintiff to discern the reason for his absence, and plaintiff has failed to proffer any admissible evidence to suggest that this reason was false and that it was more likely than not that discrimination was the real reason for his termination.  Plaintiff does not dispute that he last filed a notice of address change with the Personnel office on September 13, 2000 and that this address and telephone number was not accurate as of February 23, 2001.  In addition, plaintiff concedes that his doctor mailed his workers' compensation forms to the wrong address and fails to aver that he proffered a medical excuse for his absence any time between February 23, 2001 and his termination.  Although plaintiff affirms that he spoke to Ann in the Personnel office on March 15, 2001, he does not aver that he informed her of his medical condition, return to work date or updated address.  Moreover, although plaintiff avers that the accident report "mysteriously reappeared" after his termination, he failed to produce a copy of it or suggest why the individuals seeking information regarding his absence should have been aware of  its existence prior to his termination.

While plaintiff was ultimately able to convince the Workers' Compensation Board and the Department of Labor that he should not be denied workers' compensation and unemployment benefits, those decisions do not appear to rely upon any evidence suggesting defendant's knowledge of the circumstances of plaintiff's absence at the time of his absence.  Finally, even assuming that plaintiff was only required to call in on the first day of his absence and then again when ready to return to work, plaintiff's claim would still fail because there is nothing to suggest that defendant's request for medical documentation was made for an improper purpose.  Stated another

way, plaintiff has proffered no admissible evidence to suggest that any of the individuals

involved in the decision to terminate his employment were aware of either his claim of

injury or his prior participation in an investigation of a harassment complaint at any time

prior to his termination.


## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that

defendant's motion for summary judgment (Dkt. #26), is **GRANTED** and plaintiff's

motions for summary judgment (Dkt. ##43, 47), are **DENIED**.


The Clerk of the Court is directed to enter judgment in favor of the

defendant.


**SO ORDERED.**

DATED:      Buffalo, New York
            July 28, 2006


**S/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**